SAKS & COMPANY, Respondent, *v.* THE NEW YORK EDISON COMPANY, Appellant.

First Department, June 8, 1917.

**Contract — agreement to reduce rates for electric current if reductions are made to other consumers — reductions made to consumer in lieu of payment of rent — contract construed — when plaintiff not entitled to recover alleged overpayment — limitation of action.**

Action to recover overpayments alleged to have been made by the plaintiff for electric current furnished by the defendant during a period of nine years. The contract provided that in the event of any reduction in the prices of the defendant made to another consumer using current under like conditions as the plaintiff, corresponding reductions should be made

in the terms of the contract with the plaintiff. On the trial it was shown that the defendant, occupying a portion of premises owned by another consumer for use as a substation for the manufacture of its electricity, made a contract with such consumer to furnish current at rates lower than those charged the plaintiff for current consumed up to the value of $10,000, and that for current consumed in excess of said sum the sum of $3,500 was charged against the rent for the use of the aforesaid station, and thereafter any current used in excess of $13,500 was to be paid for by said customer at the regular wholesale rate charged to the plaintiff and others.

*Held,* that the reduction in rates to the other customer was in fact made in payment of the rental value of the premises occupied by it for a substation, and hence the plaintiff had failed to establish a cause of action upon its contract.

By the contract with the other consumer it was intended to effect a payment of rent, although a clause in the contract stated that the defendant was to use the consumer's premises " free and without charge," for said phrase was loosely used and not intended to contradict the prior provisions of the contract.

The plaintiff's action, although based upon a fraudulent concealment and misrepresentation by the defendant, being merely an action to recover a money judgment for overpayments, the Statute of Limitations began to run when the payments were made and the right to recover them accrued, and not from the date of the discovery of the fraud. Hence upon a new trial no payments can be recovered which were made more than six years prior to the commencement of the action.

MOTION by the defendant, The New York Edison Company, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance after the rendition of a verdict in plaintiff's favor by direction of the court upon a trial at the New York Trial Term in April, 1916.

*Henry J. Hemmens* and *Thomas H. Beardsley,* for the motion.

*Alfred P. W. Seaman,* opposed.

PAGE, J.:

The action is brought by the plaintiff, Saks & Company, to recover from the New York Edison Company overpayments alleged to have been made for electric current consumed by the plaintiff during the period from January 1, 1904, to January 1, 1913.

The complaint alleges that pursuant to a contract made

between the plaintiff and the defendant on the 5th day of December, 1903, it was agreed that defendant should furnish electric current to the plaintiff at certain specified rates, with a proviso that in the event of the defendant making any reduction in prices to a customer using current under like conditions, corresponding reductions in prices should be made to the plaintiff.

It is further alleged that on the 10th day of March, 1904, the defendant made a contract with the Broadway Realty Company, whereby it reduced the cost of electric current to the said Broadway Realty Company at all times since the 5th day of December, 1903, to a price of three cents per kilowatt hour, and that by the terms of the contract between the plaintiff and the defendant the plaintiff became entitled to that rate. It is then alleged that the defendant concealed from the plaintiff the fact that it had made this reduction to the Broadway Realty Company, and the plaintiff had no knowledge or notice thereof until the month of December, 1912, and that the defendant falsely and fraudulently represented to the plaintiff in writing each and every month from the 1st day of January, 1904, to the 1st day of January, 1913, that there was due from the plaintiff to the defendant for current used, certain amounts charged at full prices, provided in the original contract between them, without any reduction, and that relying upon the said statements by the defendant the plaintiff paid the amount of the bills so rendered.

It is further alleged that the plaintiff thereafter demanded repayment of the said overpayments, with interest, and the defendant has refused to make the same. Judgment is demanded that the plaintiff recover from the defendant the amount of such overpayments, with interest and costs.

Upon the trial the contract between the plaintiff and the defendant for current was placed in evidence. The portion thereof material to the questions raised upon this motion provides: " In the event of any reduction in the prices of The New York Edison Company made to a customer using current under like conditions, corresponding reductions shall be made in the terms of this contract as herein scheduled."

The first question raised in the action involves a construction of this clause for the purpose of determining what is

meant by the words: " to a customer using current under like conditions." It was shown that the Broadway Realty Company, with whom the defendant is alleged to have made a contract at a rate lower than that given to the plaintiff, used the current merely for lighting purposes and in quantities approximating the quantity consumed by the plaintiff. The plaintiff conducts a large dry goods establishment, and the Broadway Realty Company operates an office building known as the Bowling Green Building. The only material difference between the service rendered the Broadway Realty Company and that rendered to the plaintiff consists of the fact that the New York Edison Company had a substation in the basement of the Bowling Green Building which it used for the purpose of supplying all the other buildings in that vicinity, and the Broadway Realty Company was able to obtain its current direct from the substation without the intervention of channels of conveyance through the streets, whereas the plaintiff obtained its current by conveyance from a substation at a greater distance.

The learned trial justice, over the exception of the defendant, received evidence showing that at the time when the contract was made conversations were had between the agents acting on behalf of the plaintiff and the defendant, explaining the meaning of this clause and tending to show that the plaintiff was to receive the same rate as any consumer in the city of New York buying a similar quantity of current for like purposes. This evidence was received on the theory that the words of the contract are ambiguous. While I do not agree with the learned trial justice that the contract was ambiguous, I think his finding upon the evidence that the plaintiff and the Broadway Realty Company were customers " using current under like conditions " within the meaning of the contract, was correct and could be supported by a reasonable interpretation of the language of the instrument alone, without outside evidence. The defendant practically concedes this and does not urge the point before this court.

A more serious question is presented, however, as to the interpretation of the contract between the defendant and the Broadway Realty Company. That contract provides in paragraph " 2: "

" In consideration of the use of the basement of said premises for the storage batteries and other apparatus of said Edison Company, all of which is now installed therein, the price for such current supplied under said contract shall be three cents (3c) a kilowatt hour."

Paragraph " 3 " provides:

" On and after May 1st, 1904, and during the remainder of the term of said contract, should such payments exceed the sum of $10,000 annually, any excess thereof, to an amount not exceeding $3,500 is to be credited to the annual rental of said basement, and said current is to be supplied in payment for such annual rental; for all current supplied in excess of 450,000 kilowatt hours annually, the price is to be three cents (3c) a kilowatt hour."

Paragraph " 5 " provides:

" Said Realty Company hereby leases to said Edison Company the space in said basement hereinbefore referred to, for and during the continuance of this contract, for the purposes above specified, free and without charge for such use and occupancy, except as stipulated in the foregoing paragraph numbered 3."

It was shown by the bills rendered by the New York Edison Company to the Broadway Realty Company for electric current that the parties to that contract interpreted it as allowing the Broadway Realty Company a rate of three cents per kilowatt hour for current consumed up to $10,000 per year, and in years when the consumption of the Broadway Realty Company exceeded $10,000, any excess thereof to the amount of $3,500 was charged against rent for the use of the aforesaid substation, and thereafter any current used in excess of $13,500 was paid for at the regular wholesale rate charged to the plaintiff and all other customers.

The plaintiff's whole contention and basis for this action is, that the rate of three cents a kilowatt hour for current used up to the amount of $10,000 was one-half cent per kilowatt hour less than the amount which it was charged under its contract with the defendant, and, therefore, it was entitled to the rate of three cents upon all current consumed by it up to that amount. The defendant's answer to this proposition is that the difference between the regular wholesale rate charged

to the plaintiff, and the three-cent rate allowed to the Broadway Realty Company, represented rent for the use of the basement of the Bowling Green Building for a substation. The plaintiff points, however, to paragraph " 5 " of the contract quoted above which says that the realty company " hereby leases to said Edison Company the space in said basement hereinbefore referred to, * * * free and without charge for such use and occupancy, except as stipulated in the foregoing paragraph numbered 3." The plaintiff and the learned trial justice have construed this clause of the contract to mean that except for the provision allowing $3,500 to be credited to annual rental whenever the consumption of current by the Broadway Realty Company should exceed $10,000, there was to be no charge for rent of the basement, and, therefore, the rate of three cents allowed upon all current up to $10,000 was without consideration and formed no portion of the rent. We think this construction does violence to the language of the contract. As shown above, clause " 2 " of the contract fixing the rate at three cents per kilowatt hour expressly states that it is so fixed " in consideration of the use of the basement of said premises for the storage batteries and other apparatus of said Edison Company." The mere fact that in clause " 5 " the contract stated that the Edison Company was to use the space " free and without charge " is not sufficient to offset the actual nature of the agreement as shown by the prior clause. The right to the use of the basement of a large office building is a substantial and valuable right which the Broadway Realty Company would probably not intend to give free of charge during any year in which it might consume less than $10,000 worth of current. In fact during several years of the term of the contract the said company did consume less than $10,000 worth of current which, under the construction contended for by the plaintiff, would have allowed the defendant the use of the basement without charge. It is stipulated in the record that the agreement was drawn by laymen without the assistance of counsel, and a reading of the entire agreement, together with the interpretation placed upon it by the parties in the bills rendered, show that the words " free and without charge " in paragraph " 5 " thereof were loosely used and were not intended as a

contradiction of the provisions of paragraph " 2 " stating that the rate of three cents was made in consideration of the use of the basement. It seems to me, therefore, that the proper interpretation of the contract is that the rental to be paid by the New York Edison Company for the basement was the difference between the three-cent rate to be allowed the Broadway Realty Company upon all current used, and the regular wholesale rate, and in years when the Broadway Realty Company should use more than $10,000 worth of current, the New York Edison Company should pay an excess rent by giving free current to the additional amount of $3,500.

The plaintiff's contention is that these provisions of the agreement were merely a subterfuge for the purpose of hiding an unjust discrimination. It has not been shown, however, that the total amount of reduction allowed to the Broadway Realty Company for the use of current is less than the reasonable rental value of the basement; in fact, no evidence as to the reasonable value of the use and occupation of the basement was offered. If the rental value of the basement was equal to or in excess of the amount allowed to the Broadway Realty Company by the defendant under this contract, then it is clear that the Broadway Realty Company has not been allowed a cheaper rate for the use of current than that given to the plaintiff.

I think, therefore, that the plaintiff has failed to show that the defendant granted a reduced rate to the Broadway Realty Company and has failed to establish a cause of action.

Another point raised by the defendant which it is unnecessary to consider in my view of the case, but which might become material upon a new trial, is the question of the bar of the Statute of Limitations as to a portion of the plaintiff's claim. Though the action is not an action in contract, as claimed by the defendant, but is based upon fraudulent concealment and misrepresentation by the defendant, nevertheless, it is merely an action to recover a money judgment, and the Statute of Limitations runs from the time when the payment was made and the right to recover it back accrued, and not from the date of the discovery of the fraud. (Code Civ. Proc. § 382, subd. 5.) The plaintiff has attempted to

show that by reason of a credit of twenty-seven cents allowed on the account by the defendant within six years of the commencement of the action, it was an open and running account, and the Statute of Limitations is no bar. The difficulty with this argument, however, is that the action is not brought to recover upon an open and running account, but is merely an action to recover money paid by mistake, induced by fraud of defendant.

I am of the opinion that there is no answer to the defendant's claim that the Statute of Limitations applies and that the plaintiff, in any event, upon a new trial could not recover installments of money overpaid more than six years prior to the commencement of the action.

The exceptions are sustained and the verdict set aside and a new trial ordered, with costs to defendant to abide the event. The finding of the jury that the overpayments, to recover for which the action is brought, were made in consequence of defendant's false and fraudulent representations upon which the plaintiff relied, is reversed.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concurred.

Exceptions sustained, verdict set aside, and new trial ordered, with costs to defendant to abide event. Order to be settled on notice.